UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>Scene One Entertainment, LLC, f/k/a<br>Bow Tie Management LLC, *et al,*[1]<br><br>Debtors. | Chapter 11<br>Case No. 26-11388<br>Lead Case<br>Joint Administration<br>Being Requested<br>Case No. 26-11389<br>Case No. 26-11390<br>Case No. 26-11391<br>Case No. 26-11392<br>Case No. 26-11393<br>Case No. 26-11394<br>Case No. 26-11395<br>Case No. 26-11396<br>Case No. 26-11397 |

**DEBTORS' MOTION FOR TURNOVER OF FUNDS**

The Debtors-in-Possession and Debtors herein, Scene One Entertainment, LLC f/k/a Bow Tie Management LLC ("Scene One"); BTC Schenectady, LLC ("BTC Schenectady"); BTC Theater Management, LLC ("BTC Theater"); Scene One Entertainment Parks, LLC ("Parks"); Scene One Gilford, LLC ("Gilford"); Scene One Greenville, LLC ("Greenville"); Scene One Market Arcade, LLC DBA Scene One Market Arcade Cinemas ("Market Arcade"); Scene One New Canaan, LLC ("New Canaan"); Scene One Spectrum, LLC ("Spectrum"); and Scene One Wilton, LLC ("Wilton"), the above-captioned Debtors and Debtors-in-Possession (collectively,

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, and each Debtor's case numbers are: Scene One Entertainment, LLC f/k/a Bow Tie Management LLC (9730, case no. 26-11388); BTC Schenectady, LLC (8547, case no. 26-11389); BTC Theater Management, LLC (7543, case no. 26-11390); Scene One Entertainment Parks, LLC (7786, case no. 26-11391); Scene One Gilford, LLC (9730*, case no. 26-11392); Scene One Greenville, LLC (2654, case no. 26-11393); Scene One Market Arcade, LLC DBA Scene One Market Arcade Cinemas (6830, case no. 26-11394); Scene One New Canaan, LLC (3947, case no. 26-11395); Scene One Spectrum, LLC (1526, case no. 26-11396); and Scene One Wilton, LLC (3876, case no. 26-11397).

*Upon information and belief, Scene One Gilford operated for approximately two years as a d/b/a of Scene One Entertainment, LLC. Scene One Gilford, LLC was formed on or around March 3, 2026. Debtors do not believe a separate EIN was ever procured for Scene One Gilford, LLC.

the "Debtors"), by and through their proposed attorneys, Boyle Legal, LLC, seek relief from this Court pursuant to 11 U.S.C. §§ 105 and 543, and in support thereof, respectfully show as follows:

## JURISDICTION

1. The Court has Jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. The statutory and rule-based predicates for the relief requested herein are sections 105 and 543 of the Bankruptcy Code and Rules 6002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. On November 22, 2026 (the "Petition Date"), the Debtors filed a voluntary petition for relief with the Court under Subchapter V of Chapter 11 of the Bankruptcy Code.

5. The Debtors continue to operate their businesses and manage their properties as Debtors-in-Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Debtors have filed a motion requesting joint administration and substantial consolidation of these Chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and 11 U.S.C. § 105 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. No request for the appointment of a trustee or examiner has been made in these Chapter 11 cases, and no committees have been appointed or designated.

8. The Debtors are Limited Liability Companies organized under the laws of the

State of New York and Delaware and maintain a shared principal office at 400 State Street, Schenectady, NY, 12305.

9. Debtors operate as a historic American movie theater chain with locations in New York, Connecticut, and Colorado.

10. The factual background relating to the Debtor's commencement of this Chapter 11 Cases is set forth in detail in the *Declaration of Joseph Masher In Support of First Day Relief and Petition* filed on the Petition Date and incorporated herein by reference.

11. As discussed in the *Declaration of Joseph Masher*, the Debtors were party to several pre-petition licensing, distribution, vendor, banking, and ticketing contractual agreements whereby Debtors provided, and were also provided, services for the sale of concessions, tickets, space, and film screening rights and warranties.

12. Debtors, during a period of expansion and acquisition, sought alternative funding through several merchant cash advance agreements (MCAs) which were then found to be untenable through their exorbitant daily repayment structure.

13. Debtors relied on the advice and counsel of Debt Consultants Group, LLC, (“DCG”) out of Miami, FL, which directed Debtors to default on said MCA repayments and, alternatively, pay DCG $189,000.00 per week for a period of 12-weeks with said funds being utilized, allegedly, by DCG to negotiate more favorable repayment terms with said MCAs.

14. In or around week-8 of the 12-week repayment scheme, DCG approached Debtors and articulated that repayment would actually require 37-weeks to certain MCAs and 57-weeks to others.

15. Debtors expressed their concern over the feasibility of same.

16. Thereafter, DCG “fired” Debtors as a client and alerted the MCAs of which they

had been allegedly been negotiating repayment terms on behalf of Debtors that Debtors were no longer clients of DCG and that the MCAs could resume debt collection activity directly against Debtors.

17. Following this DCG-induced default, Debtor's MCAs, including Dover Capital LLC, Highland Hill Capital LLC, ClearFund Solutions LLC, and App Funding Beta LLC, filed proceedings and UCC Lien enforcement levies against Debtors' and served same upon Debtors' banking institutions, payment processors, and contractual rebate vendors of Debtors.

18. The specific entities which have been levied include:

a. TD Bank, N.A.;
b. NBT Bank, N.A.;
c. Versant Media Group, Inc. d/b/a Fandango Media, LLC;
d. Atom Tickets, LLC;
e. Global Payments, Inc. d/b/a Worldpay, Inc.;
f. Screenvision Exhibition Inc.;
g. Coca-Cola Beverages Northeast, Inc.;
h. The Boxoffice Company, LLC;
i. Netflix, Inc.;
j. Vistar o/b/o The Hershey Company, Mars Inc., Mondelez International Inc, and Home Market Foods Inc.

(collectively, the "Levied Accounts").

19. Debtors have now filed for bankruptcy with this Court Under Subchapter V of Chapter 11 of Title 11 of the United States Code.

20. Upon information and belief, Levied Accounts remains in possession and control of certain monies owed to Debtors.

21. Said accounts payable represent hundreds of thousands of dollars (approximately $750,000.00-$900,000.00) of operating revenues for the Debtor and are critical for Debtor's continued post-Petition operations.

**RELIEF REQUESTED**

22. Debtors request this Court issue an order pursuant to Sections 542 and 543 of the Bankruptcy Code directing for an accounting and turnover of accounts payables held by Levied Accounts and owed to Debtors.

23. Sections 542 and 543 of the Bankruptcy Code require custodians and non-custodians in possession of Debtors' property to account for and deliver to the Debtors-in-Possession property under their control.

24. Section 105(a) of the Bankruptcy Code allows the Court to issue any order "necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

25. Section 101(11) of the Bankruptcy Code defines "Custodian."

26. It is respectfully submitted that the Levied Accounts, are a mix of Custodians and non-Custodians as contemplated under Section 101(11).

27. While Section 543 of the Bankruptcy Code is self-effectuating, Section 542 is not, and, in the interest of judicial economy, Debtors seek an order directing turnover under both provisions of the Bankruptcy Code.

28. Debtors require these funds for continued operations, particularly in the critical opening juncture of their Chapter 11 reorganization.

29. The Debtors intend to use the funds received from the Levied Accounts to pay necessary ongoing operational expenses, necessary ongoing concerns, and all relevant post-petition obligations.

30. Debtors' businesses are worth far more operating as ongoing concerns than if they are liquidated, and such proceeds are paramount for Debtors' success at the critical early stages of these proceedings.

31. While Debtors believe that they have identified all Custodians holding amounts payable to Debtors at the time of filing, Debtors reserve the right for further turnover motions should others be identified post-petition.

**WHEREFORE,** the Debtors respectfully request this Court issue an Order directing the Levied Accounts to file an Accounting with the Court and to turn over all funds held by them as Custodians, and for such other and further relief the Court deems just and proper.

DATED: November 22, 2026
Troy, New York

BOYLE LEGAL, LLC

By: /s/Michael L. Boyle

Michael L. Boyle
*Proposed Attorney for*
*Debtor-in-Possession*
64 2nd Street
Troy, New York 12180
mike@boylebankruptcy.com
518-407-3121