UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>Scene One Entertainment, LLC, f/k/a<br>Bow Tie Management LLC, *et al,*[1]<br><br>Debtors. | Chapter 11<br>Case No. 26-11388<br>Lead Case<br>Joint Administration<br>Being Requested<br>Case No. 26-11389<br>Case No. 26-11390<br>Case No. 26-11391<br>Case No. 26-11392<br>Case No. 26-11393<br>Case No. 26-11394<br>Case No. 26-11395<br>Case No. 26-11396<br>Case No. 26-11397 |

# MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER: (A) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL ON AN EMERGENCY/INTERIM BASIS, (B) GRANTING ADEQUATE PROTECTION PURSUANT TO SECTIONS 105, 361 AND 363 OF THE BANKRUPTCY CODE, AND (C) SCHEDULING FURTHER AND FINAL HEARINGS FOR APPROVAL OF THE DEBTOR'S CONTINUED USE OF CASH COLLATERAL

Scene One Entertainment, LLC f/k/a Bow Tie Management LLC ("Scene One"); BTC Schenectady, LLC ("BTC Schenectady"); BTC Theater Management, LLC ("BTC Theater"); Scene One Entertainment Parks, LLC ("Parks"); Scene One Gilford, LLC ("Gilford"); Scene One Greenville, LLC ("Greenville"); Scene One Market Arcade, LLC DBA Scene One Market Arcade Cinemas ("Market Arcade"); Scene One New Canaan, LLC ("New Canaan"); Scene One Spectrum, LLC ("Spectrum"); and

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, and each Debtor's case numbers are: Scene One Entertainment, LLC f/k/a Bow Tie Management LLC (9730, case no. 26-11388); BTC Schenectady, LLC (8547, case no. 26-11389); BTC Theater Management, LLC (7543, case no. 26-11390); Scene One Entertainment Parks, LLC (7786, case no. 26-11391); Scene One Gilford, LLC (9730*, case no. 26-11392); Scene One Greenville, LLC (2654, case no. 26-11393); Scene One Market Arcade, LLC DBA Scene One Market Arcade Cinemas (6830, case no. 26-11394); Scene One New Canaan, LLC (3947, case no. 26-11395); Scene One Spectrum, LLC (1526, case no. 26-11396); and Scene One Wilton, LLC (3876, case no. 26-11397).

*Upon information and belief, Scene One Gilford operated for approximately two years as a d/b/a of Scene One Entertainment, LLC. Scene One Gilford, LLC was formed on or around March 3, 2026. Debtors do not believe a separate EIN was ever procured for Scene One Gilford, LLC.

Scene One Wilton, LLC ("Wilton"), the above-captioned Debtors and Debtors-in-Possession (collectively, the "Debtors"), by and through their undersigned proposed counsel, Boyle Legal, LLC, hereby move this Court (this "Motion") for entry of an interim order, in substantially the form attached hereto as Exhibit A (the "Interim Order"), (a) authorizing the Debtors' use of cash collateral on an interim basis, (b) granting adequate protection pursuant to sections 105, 361 and 363 of title 11 of the United States Code (11 U.S.C. §§ 101 et seq., the "Bankruptcy Code"), and (c) scheduling further hearings to consider entry of a final order approving the Debtors' continued use of cash collateral (the, "Final Order"). In support of this Motion, the Debtors respectfully represent as follows:

## BACKGROUND

1. On November 22, 2026 (the "Petition Date"), the Debtors filed a voluntary petition for relief with the Court under Subchapter V of Chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate their businesses and manage their properties as Debtors-in-Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors have filed a motion requesting joint administration and substantial consolidation of these Chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and 11 U.S.C. § 105 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request for the appointment of a trustee or examiner has been made in these Chapter 11 cases, and no committees have been appointed or designated.

5. The Debtors are Limited Liability Companies organized under the laws of the

State of New York and Delaware and maintain a shared principal office at 400 State Street, Schenectady, NY, 12305.

6. Debtors operate as a historic American movie theater chain with locations in New York, Connecticut, and Colorado.

7. The factual background relating to the Debtor's commencement of this Chapter 11 Cases is set forth in detail in the *Declaration of Joseph Masher In Support of First Day Relief and Petition* filed on the Petition Date and is incorporated herein by reference.

JURISDICTION

8. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

9. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

10. The statutory and rule-based predicates for the relief requested herein are sections 105, 361 and 363 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

STATEMENT PURSUANT TO RULE 4001(b)(l)(B)

11. Debtors provide the following summary of the material provisions of this Motion pursuant to Bankruptcy Rule 4001(b)(l)(B):

a. From a UCC search performed as of November 21, 2026, Debtors have the following UCC's filed against Scene One with regard to its cash and cash equivalents:

i. Meged Funding Group, bearing UCC-1 number 202504015391258 (and UCC-3 number of 20260716083965-7) filed on July 16, 2026[2];

[2] Upon information and belief, the original filing was entered on April 1, 2025 by CT Corporation System, as Representative

ii. Clearfund Solutions, LLC, bearing the UCC-1 number 202511207539386, filed on November 20, 2025;

iii. Soundcheck Capital, LLC, bearing the UCC-1 number 202601025006225, filed on January 2, 2026;

iv. CT Corporation System, as Representative, bearing the UCC-1 number 20260505045655-7, filed on May 5, 2026;

v. Highland Hill Capital LLC, bearing the UCC-1 number 20260505045657-5, filed on May 5, 2026;

vi. Dover Capital, LLC, bearing the UCC-1 number 20260701073503-0, filed on July 1, 2026;

vii. Funding Metrics, LLC, bearing the UCC-1 number 21260706046831-0, filed on July 1, 2026;

viii. Funding Metrics, LLC, bearing the UCC-1 number 21260706046933-7, filed on July 1, 2026; and

ix. App Funding Beta, LLC, bearing the UCC-1 number 20260701073511-9, filed on July 1, 2026.

b. From a UCC search performed as of November 21, 2026, Debtors have the following UCC's filed against New Canaan with regard to its cash and cash equivalents:

i. Firstline Advance, LLC, bearing the UCC-1 number 20260615065556-1, filed on June 16, 2026.

12. Debtors seek authorization to use purported Cash Collateral in order to pay employee wages and other necessary ordinary course operating expenses as well as administrative expenses incurred in its Chapter 11 Case.

13. Debtors are seeking interim authorization to use purported Cash Collateral through December 11, 2026 pursuant to the Budget attached to the Interim Order annexed hereto and

continued use of Cash Collateral pursuant to future Budgets and Interim and Final Orders.

14. The Debtors dispute the validity and standing of the UCC creditors to collect purportedly collateralized cash and cash equivalents and any classification of such creditors as secured, if even legitimate.

15. The Debtors intend to initiate adversary proceedings against all above identified "Merchant Cash Advance" creditors to dispute any collateralization of its cash and cash equivalents, as well as the legitimacy of said amounts "owed" in the totality.

16. In order to adequately protect the Pre-Petition UCC filed creditors' interest in the Cash Collateral while such adversary proceedings are underway, the Debtors propose paying any ordered adequate protection payment amount directly to the Subchapter V Trustee to be held pending further orders and final determinations of this Court.

## RELIEF REQUESTED

17. The Debtors seek to use cash existing on or after the Petition Date that may be part of the purported Pre-Petition Collateral (the "Cash Collateral"). The Debtors hereby request that the Court grant the following relief:

a. authorize the Debtors, pursuant to section 363(c) of the Bankruptcy Code, to use Cash Collateral in accordance with the budget attached to the proposed Emergency Order and such additional budgets as may be agreed to from time to time by the Debtor and its Secured Creditors or approved by the Court (collectively, the "Budget");

b. authorize the Debtors, pursuant to sections 361 and 363 of the Bankruptcy Code, to provide adequate protection to the Subchapter V Trustee, to be held in trust during the life of any and all adversary proceedings filed, as found within the

Proposed Order; and

c. schedule additional hearings to consider entry of the Interim Order and the Final Order approving the Debtors' continued use of Cash Collateral.

## BASIS FOR RELIEF

### A. The Debtors Have an Immediate Need to Use Cash Collateral

18. Debtors have an immediate, urgent, and ongoing need to use Cash Collateral pending interim and final hearings on this Motion.

19. As of the Petition Date, the Debtors purportedly have no unencumbered cash on hand, due to such purported collateralization of funds, that can be used to fund their business operations and pay operating expenses.

20. Debtors operate as an ongoing concern, which will generate future revenue to continue operations post-petition; however, current cash on hand is purportedly completely collateralized by Debtor's pre-petition UCC Creditors.

21. Additionally, as of the time of filing, the Debtors have significant accounts receivable and payment processing systems which have been frozen by such UCC creditors that, once collected, will replenish coffers and provide additional adequate protection.

22. Based on the Debtors internal accountings, there exists between $750,000.00 and $900,000.00 in cash receivables currently frozen by various UCC enforcement liens served on Debtors' depositories and cash management vendors.

23. Absent the ability to immediately use purportedly collateralized cash on hand, the Debtors' ability to pay ongoing, necessary post-petition expenses (e.g. film licenses, vendor contracts, wages, utilities, and other critical operating expenses) will be severely hampered.

24. If the Debtors cannot maintain sufficient operating liquidity to meet their post-

petition obligations on a timely basis, they will be forced to lay off staff and may even be required to wind down specific theaters, resulting in permanent and irreparable loss of business, and therefore value, to the detriment of the Debtors, their Bankruptcy Estates, priority and general unsecured creditors, and other parties in interest.

25. Said discontinuance of operations will cause extreme prejudice to the entire Bankruptcy estate as collection of accounts receivables owed to Debtors will be stymied and no new revenues will be generated.

26. This potential loss of revenue and going concern value would be extremely harmful at this critical juncture and could jeopardize the Debtors' ability to maximize the value of their services, assets, and operations in this Chapter 11.

27. Debtors have modest cash on hand, which they intends to use for the payment of wages and other required business operational expenses, at the time of filing and believes post-petition revenues will quickly replenish its cash reserves, but at the outset of the bankruptcy, Debtors have an immediate need for use of its cash collateral.

28. Debtor has identified its most critical outstanding expenses as it relates to the use of cash collateral as follows:

(i) Payment to Debtors' various insurance companies to assure adequate and ongoing insurance for the welfare and benefit of the Bankruptcy Estate.

(ii) Payment to certain Critical Vendors[3]

(iii) Payment of wages to its Employees

(iv) Payment of ongoing, necessary, normal course expenses, including

[3] Debtors have contemporaneously with this Motion brought a Motion before this Court seeking authorization to pay certain Critical Vendors.

rents, utilities, concessions, and other day-to-day items.

B. The Interests of UCC Creditors Are Adequately Protected

29. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may only use "cash collateral" with the consent of the secured party with an interest therein or court approval. See 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in cash collateral, the court shall prohibit or condition such use of cash collateral as is necessary to provide adequate protection of such entity's interest. See 11 U.S.C. § 363(e).

30. Appropriate adequate protection is decided on a case-by-case basis. See e.g., In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986); In re Mose/lo, 195 B.R. 277,289 (Bankr. S.D.N.Y. 1996); In re Beker Indus. Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also In re JKJChevrolet, Inc., 190 B.R. 542,545 (Bankr. E.D. Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case) (citing In re O'Connor, 808 F.2d 1393, 1396-97 (10th Cir. 1987)).

31. Although adequate protection is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides the following three (3) nonexclusive examples of what may constitute adequate protection:

> (i) requiring the [debtor] to make a cash payment or periodic cash payments to such entity, to the extent that the ... use ... under section 363... results in a decrease in the value of such entity's interest in such property;
>
> (ii) providing to such entity an additional or replacement lien to the extent that such ... use ... results in a decrease in the value of such entity's interest in such property; or

(iii) granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

32. Essentially, with the provision of adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. See In re Hubbard Power & Light, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996); In re 495 Cent. Park Ave. Corp., 136 RR. 626,631 (Bankr. S.D.N.Y. 1992); Beker Indus., 58 B.R. at 736; see also In re Nice, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral").

33. The Debtor asserts that the UCC creditors will be adequately protected by said adequate protection payments deposited with the Subchapter V Trustee and the continuation of the Debtor's businesses.

The Proposed Adequate Protection

34. In order to adequately protect the interest of the UCC creditors, in the Cash Collateral, the Debtors propose to provide the following form of adequate protection (collectively, the "Adequate Protection").

35. Ongoing Payments.

(i) The Debtors propose to pay amounts owing to their purported Cash Collateral Creditors in adequate protection payments to the Subchapter V Trustee, to be held in trust, until all matters of dispute are resolved by the Court in individual adversary proceedings.

(ii) The Debtors shall pay the Subchapter V Trustee $10,000.00 each month in the above identified adequate protection of purported UCC creditors.

(iii) The Adequate Protection articulated above protects the interests of all other administrative, priority, and general unsecured creditors whilst disputes of UCC creditors remain underway and to avoid any litigation costs of recover or clawback proceedings.

36. Continued Operation of the Debtor's Business. The Pre-Petition UCC creditors will be additionally protected as a result of the continued operation of the Debtor's business operations. Without the use of the Cash Collateral, the Debtors would be forced to forego business opportunities, and their operations would be irreparably harmed.

37. Absent use of the Cash Collateral, the Debtors likely will be unable to pay their ordinary business expenses, including employee wages and film screening licenses.

38. Failure to make such payments would significantly jeopardize the Debtors' ability to maintain their businesses and continue their operations. The Debtors believes that the going concern value of their businesses is significantly greater than their liquidation value. As such, the Debtors continued operation likely presents the best opportunity for the Pre-Petition UCC creditors to receive the greatest recovery on account of their claims, should the Court deem their filings valid and collectible.

39. Accordingly, the Debtors submit that use of the Cash Collateral will allow the Debtor to continue their operations and, thereby, protect the Pre-Petition UCC creditors' interests. See, e.g., In re 499 W Warren St. Assocs., Ltd P'ship, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992)

(secured creditor's interest in collateral was adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); In re Willowood E. Apartments of Indianapolis II, Ltd, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); In re Aqua Assocs., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

40. Debtors' proposal is fair and reasonable under the circumstances and does not prejudice the Cash Collateral Creditors.

C. Emergency, Interim Approval Should be Granted

41. The Debtors have formulated the Budget attached to the proposed Emergency Order for the use of Cash Collateral from the Petition Date through December 11, 2026. The Debtor believes that the Budget includes only:

(i) such reasonable, necessary and foreseeable expenses to be incurred in the ordinary course in connection with the operation of their businesses, and

(ii) such administrative expenses to be incurred in connection with these Chapter 11 Cases that will become due and payable during the period covered by the Budget.

42. The Debtors respectfully request that the Court conduct a preliminary hearing on this Motion and authorize the Debtors (from and after the entry of the Emergency Order and pending the hearings to consider entry of the Interim Order and Final Order) to use Cash Collateral in accordance with the Budget. Emergency access to the Cash Collateral will ensure

that the Debtor are able to avoid immediate and irreparable harm pending the hearings to consider entry of the Interim Order and Final Order.

43. Bankruptcy Rule 4001(b)(2) governs the procedures for obtaining approval to use cash collateral. It provides:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed R. Bankr. P. 4001(b)(2).

44. After the final hearing, Bankruptcy Rule 4001(b) does not limit the use of cash collateral solely to those amounts necessary to prevent immediate and irreparable harm to the estate, and the debtor may use such amounts as it deems prudent in the operation of its business. *Cf* In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) (approving at the final hearing debtor in possession financing in excess of what had been held to be "necessary to avoid immediate and irreparable harm" at the interim hearing). The Debtors submit that, for the reasons set forth herein, immediate access to Cash Collateral in the amounts set forth in the Budget is necessary to preserve the value of the Debtor's estate for the benefit of all parties in interest.

D. Request for Further and Final Hearings

45. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court schedule such other and further interim and final hearings to consider entry of subsequent Interim and Final Orders. The Debtors further request that the hearing to consider entry of the Final Order approving the Debtors' continued use of Cash Collateral be held no later than thirty (30) days after the Petition Date.

## WAIVER OF NOTICE AND STAY REQUIREMENTS

46. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein on an emergency basis, scheduling additional hearings to consider entry of the Interim Order and the Final Order and granting such other and further relief as the Court deems appropriate.

Dated: November 22, 2026

BOYLE LEGAL, LLC

By: /s/Michael L. Boyle
Michael L. Boyle
*Proposed Attorney for Debtor and Debtor-in-Possession*
64 2nd Street
Troy, New York 12180
mike@boylebankruptcy.com
518-407-3121

# EXHIBIT A

# Proposed Interim Order

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Scene One Entertainment, LLC, *et al,*[4] | Case No. 26- |
| | Lead Case |
| | Joint Administration Being Requested |
| | Case No. 26- |
| | Case No. 26- |
| | Case No. 26- |
| | Case No. 26- |
| | Case No. 26- |
| | Case No. 26- |
| | Case No. 26- |
| | Case No. 26- |
| | Case No. 26- |
| | Case No. 26- |
| Debtors. | |

[4]The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Scene One Entertainment, LLC (9730); BTC Schenectady, LLC (8547); BTC Theater Management LLC (7543); Scene One Entertainment Parks, LLC (7786); Scene One Gilford LLC (9730)*; Scene One Greenville LLC (2654); Scene One Market Arcade, LLC DBA Scene One Market Arcade Cinemas (6830); Scene One New Canaan, LLC (3947); Scene One Spectrum, LLC (1526); and Scene One Wilton, LLC (3876).

*Upon information and belief, Scene One Gilford operated for approximately 2-years as a d/b/a of Scene One Entertainment, LLC. Scene One Gilford LLC was formed on or around March 3, 2026. Debtors do not believe a separate EIN was ever procured for Scene One Gilford LLC.

INTERIM ORDER (A) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION PURSUANT TO §§ 105, 361 AND 363 OF THE BANKRUPTCY CODE, AND (C) SCHEDULING FURTHER PROCEEDINGS FOR APPROVAL OF THE DEBTOR'S CONTINUED USE OF CASH COLLATERAL

Upon consideration of the motion, dated November 22, 2026, of Scene One Entertainment, LLC ("Scene One"), BTC Schenectady, LLC ("BTC Schenectady"); BTC Theater Management LLC ("BTC Theater"); Scene One Entertainment Parks, LLC ("Parks"); Scene One Gilford LLC ("Gilford"); Scene One Greenville LLC ("Greenville"); Scene One Market Arcade, LLC DBA Scene One Market Arcade Cinemas ("Market Arcade"); Scene One New Canaan, LLC ("New Canaan"); Scene One Spectrum, LLC ("Spectrum"); and Scene One Wilton, LLC ("Wilton"), the above-captioned Debtors and Debtors-in-Possession (collectively, the "Debtors") by and through their counsel, for entry of interim and final orders (this "Interim Order") (a) authorizing the Debtors' use of Cash Collateral (defined below) on an emergency basis, (b) granting adequate protection pursuant to §§ 105, 361 and 363 of title 11 of the United States Code (11 U.S.C. §§ 101 et seq., the "Bankruptcy Code"), and (c) scheduling further proceedings to consider an interim order and a final order (the "Final Order") granting the relief requested in the Motion and approving the Debtor's continued use of Cash Collateral; and an interim hearing having been held by this Court on November ___, 2026; and upon the record of the hearing; and after due deliberation and cause appearing therefor;

FOUND AND DETERMINED THAT[5]:

A. On November 22, 2026 (the "Petition Date"), the Debtors filed voluntary

---

[5] The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014. To the extent any of the following findings constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court").

B. The Debtors remain in possession of their assets and continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and rule-based predicates for the relief requested herein are sections 105, 361 and 363 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules).

D. Pursuant to Bankruptcy Rule 4001(b)(2), an emergency hearing on the Motion was held by the Court on November __, 2026.

E. Good cause has been shown for the immediate entry and effectiveness of this Interim Order pursuant to Bankruptcy Rule 4001(b).

F. Notice of the Motion, the relief requested by the Motion, and the emergency hearing was provided in advance of the emergency hearing to (a) the United States Trustee for the Northern District of New York (the "U.S. Trustee") and (b) the UCC creditors. The foregoing notice was adequate under the circumstances.

G. An immediate need exists for the Debtors to use accounts receivable and inventory and other "cash collateral" as defined in section 363(a) of the Bankruptcy Code including any and all pre-petition and post-petition proceeds of the Collateral (the "Cash

Collateral").

H. The Debtor shall make adequate protection payments to the Subchapter V Trustee in monthly amounts of $10,000.00.

I. The Adequate Protection is (i) reasonable and sufficient to protect the interests of the all interested creditors and (ii) consistent with and authorized by the Bankruptcy Code.

J. Good cause has been shown for the immediate entry and effectiveness of this Emergency Order pursuant to Bankruptcy Rule 4001(b).

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Motion Granted. The Motion is granted on the terms and conditions set forth in this Interim Order. Any objections or responses to the relief requested in the Motion that have not been previously withdrawn, waived, or settled, and all reservations of rights included in such objections and responses, are hereby overruled on the merits and denied with prejudice or, to the extent applicable, deferred until the hearing on any successive Interim or Final Order. The rights of all parties to object to entry of any successive Interim or Final Order are reserved.

2. Use of Cash Collateral. The Debtors are authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use of Cash Collateral through and including February 18, 2027, in accordance with the Budget attached hereto as Exhibit A, subject to a line item variance of no greater than 20% and a total variance of no greater than 15%, without prior written approval of the Subchapter V Trustee (the "Permitted Variance"), or without other Order of this Court, provided, however, that if the Debtors

expend less than the budgeted amount for a line item in any given week, the expenditure of such unspent but budgeted funds in a subsequent week shall not be included in the calculation of any Permitted Variance.

3. Adequate Protection. As adequate protection for the Debtor's use of the Cash Collateral, each of the UCC creditors is granted, pursuant to sections 361, and 363(c)(2) of the Bankruptcy Code, adequate protection of its interests in the Pre-Petition Collateral in an amount equal to the aggregate diminution in the value of its interests in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the Debtor's use of the Cash Collateral, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code or otherwise as set forth herein (collectively, the "Adequate Protection"). The Debtors assert, however, that such UCC creditors are not true and valid holders of secured debts against the Debtors through collateralization of assets. Therefore:

a. Reporting. The Debtor shall deliver bi-weekly budgets to the Subchapter V Trustee and other parties-in-interest as directed by the Court;

b. Adequate Protection Payments. Debtor shall remit monthly payments to the Subchapter V Trustee in the amount of $10,000.00;

c. Continued Operation of the Debtor's Business. Creditors will be additionally protected as a result of the continued operation of the Debtors' business operations.

d. Additional Adequate Protection. Should the Court determine that such UCC creditors' claims are valid following the conclusion of an adversary proceeding, such UCC creditors may request additional adequate protection from time to time with respect to the Pre-Petition Collateral, including the

Cash Collateral. Nothing contained in this Interim Order shall constitute, or shall be deemed to constitute, an admission by the UCC creditors that their interests are adequately protected within the meaning of Section 361 of the Bankruptcy Code on the date of this Interim Order or at any future date, and the UCC creditors reserve their rights to claim that the provisions of this Interim Order do or do not constitute adequate protection of their interests in the Pre-petition Collateral. The UCC creditors shall be entitled to such other adequate protection as may be reasonably agreed upon by the UCC creditors and the Debtors and approved by this Court or otherwise granted by this Court.

4. No Surcharge. Subject to the entry of a Final Order, without the prior written consent of the UCC creditors, there shall not be any surcharge to the Pre-Petition Collateral pursuant to section 506(c) of the Bankruptcy Code.

5. Automatic Stay. This Emergency Order shall be without prejudice to the UCC creditors' right to seek relief from the automatic stay under Section 362 of the Bankruptcy Code on any basis at any time upon notice to the Debtors and this Court. Subject to Section 362 of the Bankruptcy Code, this Stipulation does not and shall not constitute a waiver by the UCC creditors of any right which they may have with respect to the Pre-Petition Collateral or other property of the Debtors or their estate, including, without limitation, their rights as secured parties under their respective loan documents, the Uniform Commercial Code, and other applicable law. The automatic stay imposed by § 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to effectuate the requirements of this Emergency Order.

6. Carve-Out. Any Rollover Liens for additional adequate protection granted by the Court in any subsequent Interim or Final Order shall be subject to a "Carve-Out", which term shall mean an amount sufficient to satisfy (i) allowed and unpaid professional fees and disbursements incurred by Administrative Creditors of the Estate, including Boyle Legal, LLC as proposed counsel to the Debtor ("Boyle") and the Subchapter V Trustee, not in excess of $100,000.00.

7. Lien Challenge. The rights of any parties-in-interest to dispute or challenge the validity, perfection, extent, amount and priority of the UCC creditors' claims and liens (collectively, a "Lien Challenge") and/or the right to dispute the UCC creditors' right to any Adequate Protection authorized under this Interim Order are expressly preserved until otherwise ordered by the Court.

8. Termination. In the absence of a further order of the Court, the Debtors' authorization to use the Cash Collateral shall automatically terminate on any of the following events of default:

a. the Debtors' material breach of any of the terms or provisions of this Interim Order, including providing the Adequate Protection as set forth herein, and the failure of the Debtor to cure such breach within ten (10) days of receiving notice of same; overnight mail to Debtor's counsel shall be sufficient notice of an event of default hereunder;

b. the Debtors making of a payment that was not approved through their approved Budget (other than a payment which does not result in the Debtor exceeding the Permitted Variance) or, for a payment outside of the Budget;

c. any stay, reversal, vacatur or rescission of the terms of this Interim Order;

d. Debtors' actual cash disbursements vary from the approved Budget in excess of the Permitted Variance;

e. entry of an order by this Court dismissing the Debtors' Chapter 11 Case or converting the Debtors' Chapter 11 Case to cases under chapter 7 of the Bankruptcy Code;

f. the appointment of a Chapter 11 operating trustee; or

g. the Court shall not have entered a subsequent interim or Final Order by December 18, 2026.

After the occurrence of any event of default, the Debtors shall be permitted to seek Court authority, after notice and a hearing, to use the Cash Collateral or other property of the Debtors; provided, however, that the UCC creditors shall have the right to object to such use.

9. <u>Good Cause</u>. Good cause has been shown for the entry of this Emergency Order. Among other things, entry of this Emergency Order will permit the Debtors to continue operating their business and pay their continuing expenses and employee expenses.

10. <u>Good Faith</u>. The terms of such Adequate Protection are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration and owing to the disputed status of such UCC creditors.

11. <u>Best Interests of the Debtor and its Estate</u>. The Debtors requested emergency relief pursuant to Bankruptcy Rule 4001. The authority granted hereby to use Cash Collateral and to grant the Adequate Protection set forth herein is vital to avoid

irreparable harm to the Debtors and their estate. Entry of this Emergency Order is in the best interests of the Debtors and their estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtor's existing businesses.

12. Notice. In light of the circumstances, due and sufficient notice of the Motion was given.

13. No Other Liens. Unless otherwise provided by further order of the Court, and except as otherwise expressly provided herein, the Debtors shall be enjoined and prohibited from, at any time during the Chapter 11 case, granting voluntary liens in the Collateral, the Post-petition Collateral or any portion thereof to any other parties pursuant to § 364(d) of the Bankruptcy Code or otherwise.

14. Section 552(b). Subject to entry of any successive interim order or the Final Order (whichever is earlier), the UCC creditors shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the UCC creditors with respect to proceeds, products, offspring, or profits of any of the Pre-Petition Collateral.

15. No Effect on Intercreditor Rights. This Emergency Order shall not in any way affect or impair the relative priority, rights, claims or interests between and among the UCC creditors.

16. Survival; Successors and Assigns. Unless otherwise set forth herein, the provisions of this Emergency Order shall be binding upon and inure to the benefit of the

UCC creditors, the Debtors, and their respective successors and assigns (including, to the extent permitted by applicable law, any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estate or as a legal representative of the Debtor or with respect to the property of the estates of the Debtors). If an order dismissing these Chapter 11 Cases under § 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that the Rollover Liens and other protections afforded or granted to the UCC creditors pursuant to this Emergency Order as of the date of such dismissal shall continue in full force and effect and shall maintain their priorities as provided in this Emergency Order until all obligations in respect thereof shall have been paid and satisfied in full (and that such Rollover Liens and other protections, shall, notwithstanding such dismissal, remain binding on all parties in interest). Notwithstanding any reversal, stay, modification or vacatur of this Emergency Order, any use of the Cash Collateral prior to such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Emergency Order, and the UCC creditors shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to such use. The Rollover Liens shall not be discharged by the entry of an order confirming a chapter 11 plan in any of the Debtor's Chapter 11 Case.

17. Immediate Effect. This Emergency Order shall constitute the Court's findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

18. Subsequent Hearings. A further hearing shall be held on the Motion on December ___, 2026 at 10:30a.m. prevailing Eastern Time (the "Hearing") to consider

entry of subsequent Interim or Final Orders on the Motion. Any objections or responses to the Motion or to entry of a Final Order shall be filed and served no later than seven days before the Hearing and shall be served upon the Court and the following parties: (i) the Debtors, c/o Boyle Legal LLC, 64 2nd Street, Troy, NY 12180; (ii) the office of the United States Trustee for the Northern District of New York; (iii) counsel for the UCC creditors; and (iv) counsel to any statutory committee appointed in this Chapter 11 Case or, if no such committee has been appointed, the Debtor's Twenty (20) largest unsecured creditors as set forth in the consolidated list filed with the Debtor's petition; and (v) any other party appearing in these Chapter 11 Cases and requesting service pursuant to Bankruptcy Rule 2002. In the event no objections or responses are timely filed and served in accordance with the foregoing, the Court may enter a Final Order without need for the final hearing.

19. Service. The Debtors shall serve a copy of the Motion, this Order, and notice of the Interim Hearing and Final Hearing upon the parties identified in paragraph 11 of the Motion by depositing the same in first class mail, postage prepaid, not later than the second business day following entry of this Interim Order.

20. Retention of Jurisdiction. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Emergency Order.

**Exhibit A to Interim Cash Collateral Order: Interim Cash Collateral Budget of Debtor**

| **Scene One Entertainment, LLC *et al* Two Week Budget** | | |
|---|---|---|
| **Week** | **Wk 1** | **Wk 2** |
| **Week beginning (Fri)** | Nov 20 | Nov 27 |
| **Week ending (Thu)** | Nov 26 | Dec 3 |
| **(Key Operating Metrics)** | | |
| Attendance | 5,962 | 4,869 |
| Average Ticket Price | $11.42 | $11.42 |
| Concessions per Capita | $6.22 | $6.22 |
| **Cash Receipts** | | |
| Box Office Revenue | $68,081 | $55,603 |
| Concession Revenue | $37,081 | $30,284 |
| Advertising Revenue | $1,669 | $1,363 |
| Insider Transaction Repayment | | |
| **Total Receipts** | **$106,832** | **$87,250** |
| **Cost of Goods Sold** | | |
| Film Rental | $38,466 | $31,415 |
| Concessions COS | $8,899 | $7,268 |
| **Total COGS** | **$47,365** | **$38,684** |
| **Gross Profit** | **$59,467** | **$48,567** |
| **Operating Disbursements** | | |
| Advertising | $1,213 | $1,196 |
| Salaries & Wages w/Taxes/Benefits | $71,248 | - |
| Repairs & Maintenance | - | - |
| Concessions COS | $4,551 | $4,488 |
| Cleaning Services & Theatre Supplies | $1,386 | $1,584 |
| Taxes & Legal Fees | $2,525 | $1,833 |
| Security Alarms & Monitoring | $46 | $46 |
| Data & Telephone | $771 | $771 |
| IT Services | $579 | $579 |
| Utilities | $6,809 | $6,809 |
| Insurance | $2,514 | $2,514 |
| Travel & Entertainment | $350 | $350 |
| Licenses & Bank Fees & Dues | $2,135 | $1,744 |
| **Total Operating Disbursements** | **$94,128** | **$21,915** |
| **Cash Flow Before Occupancy** | **($34,661)** | **$26,652** |
| **Occupancy (paid first calendar week of each month)** | | |
| Rent & CAM | $8,755 | $8,755 |
| Property Taxes | $987 | $987 |

| | | |
|---|---|---|
| **Total Occupancy** | **$9,742** | **$9,742** |
| **Theater Cash Flow** | **($44,403)** | **$2,289** |
| **Corporate** | [redacted] | |
| G&A Allocation | $13,809 | $11,346 |
| **Cash Flow (EBITDA)** | **($58,212)** | **($9057)** |
| **Operating Free Cash Flow** | **($58,212)** | **($9057)** |
| **NET CASH FLOW** | ($58,212) | ($9057) |
| **Cash Position** | [redacted] | |
| Beginning Cash | $850,000 | $791,788 |
| Net Cash Flow | ($58,212) | ($9,057) |
| **Ending Cash** | **$791,788** | **$782,721** |
| *Cumulative Net Cash Flow* | ($58212) | ($67,269) |

###